IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RICARDO J. LALLAVE, | ) |
| Plaintiff, | ) |
| -vs- | ) No. 09-3051 |
| DAVID BIERMANN and DARRELL SANDERS, | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Now come the Defendants, DAVID BIERMANN and DARRELL SANDERS, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, state as follows:

### I. INTRODUCTION

Plaintiff was previously employed at the Department of Human Services. In 2007, Plaintiff received a thirty-day suspension for violations of the DHS sexual harassment policy and rules of conduct. This suspension was recommended by Defendants. Plaintiff alleges that he did not receive due process because Defendants had decided on the level of discipline the Department was going to impose prior to Plaintiff's pre-disciplinary hearing. For the reasons set forth below, Defendants are entitled to summary judgment on this claim.

### II. UNDISPUTED MATERIAL FACTS

1. Plaintiff, Ricardo Lallave, was previously employed as a Security Therapy Aide II with the Illinois Department of Human Services. (Ex. 1, Transcript of Deposition of Ricardo Lallave, at 12).

2. Plaintiff was a member of AFSCME. (Ex. 2, Plaintiff's grievance).

3. On or about January 3, 2007, Plaintiff was placed on administrative leave with pay. (Ex. 1, at 14, 23).

4. Plaintiff was placed on paid administrative leave pending investigation of allegations against him of sexual harassment. (Ex. 1, at 19, 23, 25).

5. Co-workers of Plaintiff alleged that he had engaged in sexually harassing behavior toward them. (Ex. 1, at 15, 19-21).

6. On or about March 8, 2007, Plaintiff was returned to work from paid administrative leave. (Ex. 1, at 14).

7. On or about March 9, 2007, a notice of pre-disciplinary hearing was issued to Lallave. (Ex. 3, notice of pre-disciplinary meeting).

8. On or about March 12, 2007, Plaintiff received a pre-disciplinary hearing packet containing documents supporting the charges against him. (Ex. 1, at 16-17).

9. Plaintiff participated in a pre-disciplinary hearing on March 19, 2007. (Ex. 1, at 14).

10. Defendant David Biermann, who held the position of Security Therapy Aide IV, was the hearing officer for Plaintiff's pre-disciplinary hearing on March 19, 2007. (Ex. 4, Transcript of the Deposition of Defendant Biermann, at 10, 15-16).

11. Plaintiff was represented by a union representative at the March 19, 2007, hearing. (Ex. 5, recommendation for discipline, March 20, 2007).

12. A management representative, Andrea Leake, was also present at the March 19, 2007, hearing. (Ex. 5).

13. At the pre-disciplinary hearing on March 19, 2007, Plaintiff and his union representative both participated in the hearing and responded to the charges. (Ex. 1, at 26-27; Ex. 5).

14. After the pre-disciplinary hearing, Defendant Biermann prepared a memorandum to the facility's Security Director on March 20, 2007, recommending a thirty-day suspension for Plaintiff. (Ex. 4, at 20-21; Ex. 5).

15. At this time, Defendant Sanders was the Security Director at the Rushville Treatment and Detention Facility of DHS. (Ex. 6, Affidavit of Darrell Sanders).

16. On or about March 20, 2007, Defendant Sanders made an independent evaluation of the information and evidence regarding the charges against Plaintiff, including Plaintiff's response to the charges, and decided that he concurred with the recommendation for a thirty-day suspension for Plaintiff. (Ex. 6).

17. Subsequently, Defendant Sanders forwarded all relevant information regarding the recommendation for a thirty-day suspension along with his recommendation to the Office of the Director of the Department of Human Services. (Ex. 6).

18. Defendant Sanders' understanding at this time was that someone in the Director's office would make an independent review of the information and make a final decision regarding the thirty-day suspension for Lallave (Ex. 6).

19. Plaintiff received a thirty-day suspension, effective March 22, 2007. (Ex. 7, CMS-2 form reflecting suspension).

20. Plaintiff grieved this suspension, arguing that he was disciplined by being placed on administrative leave and then suspended for thirty days. (Ex. 2).

21. At Step 2 of the grievance, management answered that administrative leave is not a form of discipline, and, based on an investigation outside the facility and the severity of the incident, a thirty-day suspension was recommended and approved for Plaintiff. (Ex. 2).

22. The union accepted the answer of management at Step 2 of the grievance. (Ex. 2).

23. Plaintiff's union representative, Jim Retzer, notified Plaintiff by letter on April 20, 2007, that the union would not present Plaintiff's grievance regarding his thirty-day suspension to the third level. (Ex. 8, letter to Plaintiff from Retzer, April 20, 2007).

### III. ISSUES AND ARGUMENT

**A. Defendants did not violate Plaintiff's right to due process.**

1. Plaintiff has not identified a cognizable property interest.

Plaintiff claims that Defendants are liable under 42 U.S.C. § 1983 for depriving him of a property interest without due process of law with respect to the pre-disciplinary hearing regarding the charges brought against him in March 2007. Specifically, Plaintiff alleges that a "decision was made by Sanders and Biermann . . . no later than March 5, 2007, to suspend Lallave for thirty days without pay . . . without affording him a reasonable opportunity to respond to the reasons which motivated that decision before it was actually made" and before Plaintiff received documentation regarding the charges against him. (Plaintiff's Complaint, at ¶¶ 13-14). Plaintiff alleges that, on March 5, 2007, he was approached by Biermann and Sanders in the parking lot of Plaintiff's gym. (Ex. 1, at 24-25). Plaintiff further alleges that Sanders told Plaintiff that Plaintiff was

going to come back to work soon, but that Plaintiff was going to receive a thirty-day suspension. (Ex. 1, at 25). Plaintiff alleges that when Plaintiff questioned Sanders further as to how it is possible that Plaintiff would receive discipline when he had not yet had a pre-disciplinary meeting, Sanders told him, "that's just the way it is." (Ex. 1, at 25). In his testimony, Biermann did not recall this incident. (Ex. 4, at 27).

In order to prove his claim, Plaintiff must first show that he had a property interest of which he was deprived. Property interests are not created by the Constitution; rather, a court looks to state law to determine whether a plaintiff has alleged a property interest in employment. *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (1996). "A person's interest in a benefit, such as continued employment, constitutes 'property' for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of *entitlement* to the benefit." *Id.*, citing *Perry v. Sindermann,* 408 U.S. 593, 601 (1972).

In Plaintiff's case, Plaintiff was an employee of the Department of Human Services subject to the Illinois Personnel Code. Under the Illinois Personnel Code, "[n]o officer or employee under jurisdiction B, relating to merit and fitness . . . shall be removed, discharged, or demoted, or be suspended for a period of more than 30 days, in any 12 month period, except for cause[.]" 20 ILCS 415/11. However, the Personnel Code does not include the "cause" requirement for suspensions of thirty days or less. 20 ILCS 415/11. Thus, Plaintiff can hardly have a property interest under Illinois law in not receiving a thirty-day suspension, because such an entitlement is not created by the statute. Plaintiff cannot express an entitlement to employment unless he has an interruption of more than thirty days in one twelve-month period under the Personnel Code. While Plaintiff may have had a property interest in his State employment that would have been affected by termination or a suspension of more than thirty days, his

thirty-day suspension does not deprive him of a property interest in continued employment.

Therefore, because Plaintiff has not identified a property interest implicated by his thirty-day suspension, his due process claim fails, and Defendants are entitled to summary judgment.

2. Should this Court determine that Plaintiff has identified a property interest, Plaintiff was provided with due process.

Should this Court determine that Plaintiff's property interest does extend to his thirty-day suspension, Plaintiff has not been deprived of due process. Generally, "[d]ue process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the 'opportunity to respond' required by *Loudermill* is no opportunity at all." *Ryan v. DCFS*, 185 F.3d 751, 762 (1999). However, *Ryan* also stated: "That at the start of the hearing the agency decisionmakers tentatively believe the employee should be removed does not raise a constitutional problem - indeed, it would be surprising if the employee were brought up on charges warranting termination absent such a belief - so long as the decisionmakers are open to other views." *Id*.

In Plaintiff's case, Plaintiff was notified in writing of the charges against him, given supporting documentation, provided with a pre-disciplinary hearing in which he provided responses, and was represented by a union steward. (Statement of Undisputed Material Facts, at 7-13). To the extent that Plaintiff argues that the alleged statements by Sanders when Sanders and Biermann allegedly encountered Plaintiff in the parking lot of his gym are evidence that the decisionmakers in his case were not open to other views, this argument fails. First, Plaintiff agrees that he did participate in a pre-disciplinary hearing, at which he had a full opportunity to respond to the charges against him. The facts in this case show that Biermann held a hearing and

recommended a thirty-day suspension for Plaintiff. (Facts, at 7-13). The facts further show that Sanders, upon receiving Biermann's recommendation, made an independent review of the case and decided that he concurred in Biermann's recommendation. (Facts, at 17). Then, Sanders forwarded the recommendation to the Office of the Director of DHS, and Sanders understood that someone from the Director's office would make an independent review of the case before making a final decision on whether discipline would be assessed against Plaintiff, and, if so, how much. (Facts, at 18; Ex. 6). These facts do not show that Biermann and Sanders were unwilling to take into account Plaintiff's response to the charges or any information he might present; rather, these facts show that Plaintiff did present responses and information, and that Biermann and Sanders chose, based on all the information available to them, to recommend a thirty-day suspension for Plaintiff. The fact that Biermann and Sanders may have had a tentative notion of what discipline was appropriate, as stated in *Ryan*, does not constitute a violation of any right of due process of Plaintiff.

Moreover, even if this Court determines that Plaintiff was entitled to pre-deprivation process and that process was deficient, Plaintiff took advantage of further process when he pursued the grievance process, and the union declined to pursue Plaintiff's grievance to the third level. (Facts, at 21-23). "Grievance procedures created by collective bargaining agreements can satisfy the requirements of due process for terminated employees." *Hudson v. City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004). If Plaintiff believes that the union did not represent him fairly, his cause of action is against the union for breach of its duty to fairly represent his interests, not against the Defendants for due process. See *Hudson*, 374 F.3d at 563 ("the Plaintiffs could have sued the Union for breach of its duty to fairly represent their interests-the City should not be blamed for the mistakes of the Union."). Plaintiff has presented no evidence that Defendants, or anyone else at DHS, attempted to bar his access to the grievance

process. Therefore, Plaintiff took advantage of the due process provided to him after his discipline, and Defendants are entitled to summary judgment.

However, whether Biermann and Sanders had decided, tentatively or otherwise, what their recommendation would be is irrelevant. Plaintiff has presented no evidence that the Director of DHS, the final decisionmaker with regard to Plaintiff's discipline, or anyone in the Director's office, was not open to other views on the decision to discipline Plaintiff, as required by *Ryan*, a case that dealt with termination rather than a mere suspension.

Moreover, to the extent that Plaintiff would try to argue that the Director is somehow a mere "cat's paw" for Defendants Biermann and Sanders, this argument also fails. Under the "cat's paw" theory, "where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker." *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 918 (7th Cir. 2007). In this case, however, Biermann was not alleged to have made any statements to Plaintiff regarding the level of discipline that would be assessed against him. Moreover, Biermann made his recommendation after Plaintiff's pre-disciplinary hearing, where Plaintiff had the opportunity to present his side of the story. Furthermore, Sanders, upon receiving the recommendation, performed an independent review of the case and decided that he concurred with the recommendation for a thirty-day suspension. Sanders understood that the Director of DHS had the final decisionmaking authority with regard to Plaintiff's discipline, and he believed that the Director or his designee would make an independent review of the case prior to making a decision on discipline. In the past, Sanders had made recommendations regarding discipline that were not accepted by

the Director's office. (Ex. 6). This demonstrates that the Director's office does not blindly follow Sanders' recommendations, and there is no evidence it did so in this case. Therefore, Plaintiff cannot show that the decisionmaker in this case, the Director of DHS, had any improper bias or had predetermined what Plaintiff's discipline would be.

Wherefore, because Plaintiff received notice and an opportunity to be heard, he was provided with adequate pre-disciplinary process, to the extent he was entitled to it. Hence, Defendants are entitled to summary judgment on Plaintiff's claims.

**B. Defendants are entitled to qualified immunity on Plaintiff's claims.**

Qualified immunity is a defense available to state and federal officials to ensure protection when they are required to exercise discretion in performing their duties. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages. *Id*. at 818. A public official is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. *See also Chathas v. Smith*, 884 F.2d 980, 989 (7th Cir. 1989), *cert. denied*, 493 U.S. 1095 (1990). Unless it has been authoritatively decided that certain conduct is forbidden, a public official is entitled to qualified immunity. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987). "Whether an official may be held personally liable for his or her unlawful actions turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time taken." *Townsend v. Vallas*, 256 F.3d 661, 672 (7th Cir. 2001).

A two-part test is used to analyze qualified immunity. *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir. 1986). First, the alleged conduct must violate a constitutional or

statutory duty. *Id.* Second, the statutory or constitutional violations alleged must be so clearly established that a reasonable official would have understood at the time of the incident that the conduct violated the law. *Id.* "For qualified immunity to be surrendered, preexisting law must dictate, that is truly compel . . . the conclusion for every like-situated, reasonable government agent that what he is doing violates federal law *in the circumstances*." *Khuans v. School District 10*, 123 F.3d 1010, 1020-21 (7th Cir. 1997), *quoting Lassiter v. Alabama A & M University*, 28 F.3d 1146 (11th Cir. 1994) (emphasis in original). "[I]t is not the simple existence of analogous case law that defeats the claim of qualified immunity; rather, these decisions must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 620 (7th Cir. 2002).

If it was not clearly established that a protected interest was implicated by an alleged deprivation, the defendants are protected by qualified immunity. *Ulichny v. Merton Community School District*, 249 F.3d 686, 706 (7th Cir. 2001). In order to defeat qualified immunity, plaintiff must also cite preexisting case law demonstrating the existence of a clearly established constitutional right. *Sonnleitner v. York*, 304 F.3d 704, 716-17 (7th Cir. 2002). Based on a recent Supreme Court decision, lower courts, in their discretion, may now consider the second part of the qualified immunity test first, without reaching constitutional questions. *Pearson v. Callahan*, 555 U.S.___, 129 S.Ct. 808, 821 (January 21, 2009).

In this case, Plaintiff has not identified that he had a clearly established constitutional right that was implicated by his thirty-day suspension or the circumstances surrounding it. As discussed above, it is not at all clear that Plaintiff has

a property interest of which he would be deprived by a thirty-day suspension pursuant to Illinois law. Moreover, even if this Court were to determine that Plaintiff has a property interest that is implicated by a thirty-day suspension, that property interest was not clearly established at the time the disciplinary decision was made in this case, nor was it clearly established that the requirements of *Ryan* extend to persons other than the final decisionmaker. Therefore, Defendants are entitled to qualified immunity and summary judgment should be granted in their favor.

## IV. CONCLUSION

Plaintiff has not identified a property interest that is implicated by his thirty-day suspension. Moreover, even if this Court determines that Plaintiff has identified a property interest, Plaintiff's rights to due process were not violated by Defendants. Finally, Defendants are entitled to qualified immunity on Plaintiff's claims. Therefore, summary judgment should be granted to Defendants.

WHEREFORE, for the foregoing reasons, and for the reasons stated in Defendants' statement of undisputed material facts and exhibits, Defendants respectfully request that this Court enter summary judgment in their favor.

Respectfully submitted,

DAVID BIERMANN and DARRELL SANDERS,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendants,

  s/ Kimberly F. Stevens
Kimberly F. Stevens, #6293883
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: kstevens@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RICARDO J. LALLAVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. 09-3051 |
| | ) |
| DAVID BIERMANN and | ) |
| DARRELL SANDERS, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2010, I electronically filed Defendants' Memorandum of Law in Support of Motion for Summary Judgment, with the Clerk of the Court using the CM/ECF system, which will send electronic notification of same to the following participant:

John A. Baker at johnbakerlaw@sbcglobal.net
Attorney at Law
415 South Seventh Street
Springfield, IL. 62701

Respectfully submitted,


s/ Kimberly F. Stevens
Kimberly F. Stevens, #6293883
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 782-9056
Fax: (217) 782 -8767
E-Mail: kstevens@atg.state.il.us