E-FILED
Wednesday, 18 August, 2010  05:24:11 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICARD J. LALLAVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-3051 |
| | ) | |
| DAVID BIERMANN and DARRELL SANDERS, | ) ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum of Law
In Opposition to Summary Judgment**

Now Comes the Plaintiff, RICARDO J. LALLAVE [hereafter "Lallave"], by and through his attorney, John A. Baker, and in opposition to the motion filed by the defendants, DAVID BIERMANN [hereafter "Biermann"] and DARRELL SANDERS [hereafter "Sanders"], seeking summary judgment [Doc. 13], states to the Court as follows:

**I. INTRODUCTION**

Lallave maintains that his procedural due process rights were violated by the defendants when he received a thirty day suspension in 2007. Specifically, Lallave contends that his pre-disciplinary hearing was a farce and that a decision to suspend him for 30 days had already been decided upon prior to the hearing. At the close of discovery, Biermann and Sanders move for summary judgment. For the most part the parties do not dispute the facts. The one fact that is disputed are certain statements Lallave contends were made before the pre-disciplinary hearing.

## II. STATEMENT OF FACTS

A.  **Biermann and Sanders facts agreed to by Lallave**

1-15, 17-23

B.  **Facts Lallave disputes**

16. On or about March 20, 2007, Defendant Sanders made an independent evaluation of the information and evidence regarding the charges against Plaintiff, including Plaintiff's response to the charges, and decided that he concurred with the recommendation for a thirty-day suspension for Plaintiff.

> Response: **Lallave's view is that there was no thorough review because the decision to suspend him for 30 days had been made prior to the pre-disciplinary hearing being held. In his deposition, Lallave explained as follows:**
>
>> **On March the 5th of 2006, it was a Monday, I was at the local gym; it's called Fit For Life. And Mr. Biermann and Mr. Sanders approached me in a red Ford F150 pickup truck at the time - - I don't know if he still owns it, but at the time owned by David Biermann. David Biermann was the driver, and Darrell Sanders was the passenger.**
>>
>> **After the greetings, you know, hello, how are you doing, Darrell Sanders, the then security director, told em that I was going to come back to work soon, but I was going to receive a 30-day suspension. I asked how is that possible when I have had no-disciplinary meeting. At this point, I don't have anything in writing. I just know that I'm on paid leave; that's all I know. And he says, that's just the way it is.**
>>
>> **The follow day, Tuesday, March the 6th of 2007, Kendra Lewis, now Robeson by marriage, the director of personnel, calls me and informs me that I am to return Thursday the 8th back from paid administrative leave. The, I work that weekend, and on March the 12th, I receive**

my pre-disciplinary package.

When I go to my pre-disciplinary meeting, the hearing officer is David Biermann, who was driving the pickup truck. When we go through the pre-disciplinary meeting, I went through all the incident reports, I show all the things, discrepancy, everything that is wrong with all of this, and all that Mr. Biermann says is, do you remember the conversation with Sanders at the gym? When I say yes, he stand up and leaves, and that concluded my pre-disciplinary hearing.

Furthermore, the recommendation for me is to – and I'll read it – based on the results of the investigation and recommendation from the Bureau of Civil affairs, it is recommended that STA II Lallave receive a 30-day suspension and successfully complete sexual harassment training for his actions.

The part about me receiving a 30-day suspension was already mentioned by me by Darrell Sanders on the 5th of March. So this is 14 days before my pre-disciplinary hearing, and the sexual harassment training that I actually attended on the morning of the 20th before I came back to the facility to find out what my sentence was was already prescheduled.

And I don't see it anywhere in this packet, but at least from the 15th of March, I had already received paperwork indicating that I was going to go through that training in an earlier one, I believe it was dated the 6th. So both of the things that I am recommended to serve after my pre-disciplinary hearing, which is kind of like a mini-trial, both sentences were already predetermined.

I was already scheduled for the sexual harassment training that I'm supposed to serve as part of the recommendation, and the director of security has already told me that I am going to serve the 30 days without pay, which is backed by the fact that that was the only statement made by David Biermann, the hearing officer. (π's Ex. 1, Lallave dep., p. 25-28).

C.  **Lallave's statement of facts**

1. See response to ¶ 16 *supra*.

2. The March 20, 2007, recommendation for suspension contains summary of what occurred during Lallave's pre-disciplinary meeting. The summary indicates that "Mr. Biermann asked Mr. Lallave if he remembered the conversation he had with Mr. Sanders." [π's Ex. 2].

3. In addition to a suspension, Lallave, as a result of his discipline, was ordered to attend sexual harassment training. The order directing Lallave to attend sexual harassment training was signed five days before he attended his pre-disciplinary hearing. [π's Ex. 4].

4. Lallave was protected by the terms of the master contract between AFSCME and the State of Illinois. The collective bargaining agreement provides that for all discipline in excess of an oral reprimand, the employer must hold a pre-disciplinary hearing. The contract also provides that "discipline may be imposed upon an employee only for just cause." [See π's Ex. 5].

### III. STANDARD GOVERNING THIS MOTION

Particular caution is required before granting summary judgment in a claim maintained under a law which allows for trial by jury. *See Visser v. Packer Engineering Company, Inc.,* 924 F.2d. 655 (7th Cir. 1991).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986), the Supreme Court analyzed what trial judges should look at when determining

whether to grant a Rule 56 motion for summary judgment. In this respect, the Court held:

> . . . . . we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' *Id.*

### IV. ARGUMENT

Analyzing a procedural due process claim is a two-step process. First, it must be determined if the plaintiff has been deprived of a protected interest. Second, if so, the determination is what process is the plaintiff due. *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001), *Schroeder v. City of Chicago*, 927 F.2d 1957, 1959 (7th Cir. 1991). State law defines property; federal law defines the process that is "due." *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

As a general principle, the right to due process can extend to a suspension from

employment as well as it can to a termination, provided that there is some type of rule, understanding or agreement that provides that an employee can not be suspended absent cause. *Gilbert v. Homar*, 520 U.S. 924, 931-32, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)(recognizing that public employees have a property interest in the uninterrupted receipt of their paycheck); *Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1441 (7th Cir. 1995)(recognizing that plaintiff's interest in remaining gainfully employed is an important tone that must not be interrupted without substantial justification); *Nalls v. Board of Trustees of Illinois Community College District No. 508*, 2007 WL 1031155 (N.D. Ill. 2007)(collecting cases).

**A.     Lallave has a right to a pre-disciplinary hearing before he can be suspended, therefore, he has a property interest in not losing his job for a period of thirty days without due process**

The defendants contend that a thirty day suspension does not constitute a deprivation of property. They maintain that they are under no obligation to provide any sort of a pre-deprivation proceeding. In support, they point to the Illinois Personnel Code. The problem with this argument, however, is that the Personnel Code is not the only source of property rights.

A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract, such as "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir.1996). Lallave has property rights that are created by virtue of both the Illinois Administrative Code

and the collective bargaining agreement.

### 1. Illinois Administrative Code

The Illinois Administrative Code provides protections to employees of the State of Illinois. 80 Ill.Admn.Code § 302.640 (π's Ex. 5) clearly provides that an employee must be given a notice of charges and an opportunity to be heard before he can be suspended "without pay totaling not more than 30 days."

### 2. Collective Bargaining Agreement

The collective bargaining agreement clearly provides: (1) that discipline (including a suspension) can only be "for cause". Further, the agreement provides that prior to discipline being imposed an employee is entitled to a pre-disciplinary hearing. It is well established that a collective bargaining agreement that provides an employee may not be disciplined without cause establishes a property interest. *Nalls v. Board of Trustees of Illinois Community College District No. 508*, 2007 WL 1031155 (N.D. Ill. 2007)(collecting cases).

**B.     There is a question of fact as to whether Lallave was provided with due process**

The defendants next argue that even if Lallave was entitled to a pre-deprivation hearing, they have complied with their obligations. This is an argument that is better saved for trial based upon the facts.

It is fairly well established that a pre-disciplinary hearing can not be a sham proceeding. In *Ryan v. Illinois Department of Children and Family Services*, 185 F.3d 751, 762 (7th Cir. 1999), the Court noted that "[d]ue process requires that . . . an employee be

given the chance to tell her side of the story, and that the agency be willing to listen." The Court has also held that when the pre-disciplinary hearing is a sham then it has not been a "constitutionally sufficient opportunity to respond." *Levenstein v. Salafsky*, 164 F.3d 345, 352-53 (7th Cir. 1998); *see also Fleck v. City of Springfield*, 2006 WL 752797 (C.D. Ill. 2006).

If the jury believes Lallave (see π's Response to Δ's' Fact 16, supra p. 2), they could certainly conclude that the pre-disciplinary hearing was a sham. Lallave's argument is buttressed by the fact that according to the official documentation prepared by DHS, Lallave was asked if he remembered the conversation he had had with Sanders. Further, part of the discipline, the requirement that he attend sexual harassment training, was signed off on five days before the pre-disciplinary hearing was held. If the hearing was not a sham the question would have been whether Lallave violated the sexual harassment policy. If the hearing officers were going to take the proceeding seriously they would have listened to Lallave and made a decision based upon all of the evidence. If they concluded, after the hearing, that Lallave was credible and had not violated policy there would have been no need to send him to the sexual harassment training.

Lallave was entitled to a pre-disciplinary hearing under state law and under the terms of his collective bargaining agreement. This entitled him to more than a sham proceeding. The constitution dictates that the hearing be meaningful. Lallave has presented evidence which, if believed by the trier of fact, would establish that the pre-disciplinary hearing was nothing more than a sham and that the decision on his

discipline had already been made.

The defendants argue that there is no evidence that the ultimate decision maker, the Director of the Department, was not open to his views and therefore the fact that they had already made a determination was irrelevant. (See Doc. 13, p. 8). This argument is flawed. The purpose of the hearing was to determine if Lallave had violated policy. As such, Biermann and Sanders were essentially acting as finders of fact. The fact that they told Lallave in advance of the hearing that he would be getting a thirty day suspension is evidence that they were not neutral fact finders, they had already made up their mind. The suspension decision was effective March 22, 2007. The fact remains that Lallave had a right to a pre-deprivation hearing that was fair and neutral. The individuals who were tasked with reviewing the evidence had already made up their mind what their recommendation was going to be.

The defendants further argue that there were adequate post-deprivation remedies. The problem with this argument is that simply because there are adequate post-deprivation remedies does not mean that pre-deprivation proceedings are to be ignored. The process need not be great, however, there must be a fair opportunity to respond to charges. As the Supreme Court has held "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Nonetheless, there must be some process that is more than a sham.

C.  **Defendants are not entitled to Qualified Immunity**

As established throughout this brief, it has long been established that a pre-deprivation hearing can not be a sham. Further, both the collective bargaining agreement and the Illinois Administrative Code mandate that Lallave had a property interest in his employment continuing without interruption absent cause. As such, he was entitled to a hearing and both Biermann and Sanders were aware of this. As such, qualified immunity is not appropriate.

Further, qualified immunity shields an actor only from a judgment for money damages. In his complaint Lallave seeks an injunction and other remedies. *See Moss v. Martin*, ___ F.3d ___ (7th Cir. August 2, 2010).

## V. Conclusion

For the foregoing reasons there are questions of fact that preclude summary judgment. A jury could reasonably conclude that Lallave's predeprivation hearing was a sham and that he was not afforded a meaningful opportunity to be heard. As such, summary judgment should be denied.

                                          Ricardo Lallave

                                          By: s/ John A. Baker

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:      (217) 522-3445
Facsimile:       (217) 522-8234
E-mail:          johnbakerlaw@sbcglobal.net

## Certificate of Service

This document was filed relying upon this Court's ECF system. A copy will

automatically be forwarded to all counsel of record. No one has been served via U.S. Mail.

By: s/ John A. Baker

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone: (217) 522-3445
Facsimile: (217) 522-8234
E-mail: johnbakerlaw@sbcglobal.net