## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **RICARDO J. LALLAVE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-cv-03051** |
| | ) | |
| **DAVID BIERMANN and** | ) | |
| **DARRELL SANDERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

This case is before the court for ruling on a Motion for Summary Judgment (#12) filed by Defendants David Biermann and Darrell Sanders. This court has carefully considered the arguments of the parties and the documents presented by the parties. Following this careful and thorough consideration, the defendant's Motion for Summary Judgment is GRANTED.

## JURISDICTION

Jurisdiction of this court is premised on 28 U.S.C. § 1331, federal question jurisdiction. Plaintiff has filed the instant action pursuant to 42 U.S.C. § 1983.

## BACKGROUND

A. Undisputed facts

Plaintiff was employed by the Illinois Department of Human Services and was represented by the American Federation of State, County, and Municipal Employees, AFSCME.

Sometime before January 2007, several of Plaintiff's co-workers filed allegations with the management that Plaintiff had engaged in sexually harassing behavior toward them. On January 3, 2007, Plaintiff was placed on administrative leave with pay, pending investigation of the allegations. On March 19, 2007, Plaintiff participated in a pre-disciplinary hearing, with Defendant Biermann presiding as the hearing officer. A union representative and a management representative were present during the hearing.

After the hearing, Biermann prepared a memorandum for Defendant Sanders, who was the facility's Security Director, recommending that Plaintiff's employment be suspended without pay for 30 days. Around March 20, 2007, Sanders concurred with the recommendation for a 30-day suspension and forwarded all relevant information including the recommendation for a 30-day suspension to the Office of the Director of the Department of Human Services. The Office of the Director had independent and ultimate authority to determine Plaintiff's discipline. Plaintiff received a 30-day suspension from the Illinois Department of Central Management Services, effective March 22, 2007, with reinstatement to occur on April 21, 2007.

Plaintiff then filed a grievance with the bargaining unit regarding the suspension, arguing that he was being disciplined by being placed on administrative leave and then suspended for 30 days. In response, management answered that administrative leave is not a form of discipline, and, based on an investigation outside the facility and the severity of the incident, a 30-day suspension was recommended and approved for Plaintiff. The union accepted the management's response and on April 20, 2007 notified Plaintiff that the union would not continue to pursue Plaintiff's grievance to the next level. Memorandum of Law in Support of Motion for Summary Judgment (#13, pp. 1-4).

B. Contested facts

Plaintiff admits all of the above facts, but states that Biermann and Sanders had, prior to the pre-disciplinary hearing, already decided on the disciplinary action to be imposed. Plaintiff states that the hearing, which was conducted by Biermann, and the recommendation, which was approved by Sanders, were sham proceedings. Plaintiff alleges the following incidents provide evidence that the sentence imposed had been a foregone conclusion, notwithstanding any arguments he made or evidence he presented at the pre-disciplinary hearing:

1) On March 5th, 2007, two weeks before the pre-disciplinary hearing was scheduled to occur, Defendants had approached Plaintiff outside the work environment and had informed Plaintiff that he was going to receive a 30-day suspension.

2) During the pre-disciplinary hearing, Biermann asked the plaintiff if he "remember[ed] the conversation with Mr. Sanders at the gym," and when he replied in the positive, "he stand [sic] up and leaves."

3) Part of Biermann's recommendation would be that Plaintiff would be required to successfully complete sexual harassment training for his actions. However, Plaintiff had already received an order dated March 6th and signed five days before the pre-disciplinary hearing (March 14th) that he would be required to attend sexual harassment training. He attended and completed the training on March 20, 2007, two days before the discipline was approved. Memorandum of Law in Opposition to Summary Judgment (#18, pp. 2-4).


C. Procedural history

On February 17, 2009, Plaintiff filed his complaint in the instant case, alleging that

Defendants, as public employees, deprived him of a property interest in his employment without due process of law by suspending him for 30 days without providing a reasonable opportunity to respond to their allegations, contrary to the rights afforded to him under the Fourteenth Amendment. Plaintiff has requested that the court issue the following forms of relief: 1) a declaratory judgment that the conduct in question violates 42 U.S.C. §§ 1983 and 1988; 2) an injunction prohibiting Defendants from engaging in any actions toward Plaintiff that have been found to have violated due process; 3) an injunction ordering DHS to reinstate to Plaintiff all his "employment duties, rights and obligations attendant to his position of employment which he would have held at the time of trial but for the unlawful conduct complained of in this complaint"; 4) damages sufficient to compensate Plaintiff for economic losses suffered; 5) damages in the amount of costs and expenses incurred by Plaintiff during this case, including reasonable attorney's fees; and 6) any further compensatory and punitive damages as may be permitted or deemed equitable and just by the court.

On June 30, 2010, Defendants filed a Motion for Summary Judgment (#12) and a Memorandum in Support (#13), with attached exhibits. Defendants argued that they are entitled to summary judgment because: (1) they did not violate Plaintiff's right to due process; and (2) they are entitled to qualified immunity. On August 18, 2010, Plaintiff filed a Memorandum of Law in Opposition to Summary Judgment (#18), with attached documents. Plaintiff argued that a genuine issue of material fact exists regarding whether his due process rights were violated. He also argued that Defendants are not entitled to qualified immunity because he is seeking an injunction and other remedies. On September 1, 2010, Defendants filed a Reply (#19), arguing, essentially, that (1) Plaintiff was not entitled to a pre-disciplinary hearing; and (2) there was no

genuine issue of material fact.

On September 27, 2010, this court ordered both parties to file supplemental written briefs regarding, among other things, whether Plaintiff was entitled to a pre-disciplinary hearing (#21). On October 8, 2010, Defendants filed their response memorandum with attached exhibits (#22); on October 11, 2010, Plaintiff filed his supplemental brief (#23).

ANALYSIS

If an individual is entitled to a specific proceeding, and if during the proceeding he was denied an opportunity to respond in a meaningful fashion, that individual's constitutional right to due process was violated. In a § 1983 action, an individual may sue to recover damages from a government official who violates his due process right. Summary judgment in any action shall be granted if the facts provided by the pleadings and exhibits show there is no genuine issue of material fact. On the facts provided by the parties in this case, there exists a genuine question of fact whether Plaintiff's pre-disciplinary hearing was conducted in good faith. However, Defendants have claimed that they are entitled to qualified immunity. If Plaintiff's right to a pre-disciplinary hearing was not clearly established law, then Defendants are protected from a claim of money damages regardless of whether a noncompliant hearing had occurred. Therefore, the question of law in this case is not whether Plaintiff was entitled to a pre-disciplinary hearing conducted in good faith, but whether it is clearly established that he was entitled to a pre-disciplinary hearing at all. Because it is not clearly established law that Defendants owed Plaintiff a pre-disciplinary hearing, Defendants are shielded by qualified immunity from liability for damages. Furthermore, Plaintiff cannot pursue an injunction because he does not have standing

to pursue prospective equitable relief on the facts of this case. Because no genuine issue of material fact remains, this court must grant Defendants' Motion for Summary Judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Trentadue v. Redmon, --- F.3d ----, 2010 WL 3239397, at *3 (7th Cir. 2010). Although summary judgment is not intended to cut litigants off from their right of trial by jury if they really have issues to try, Preston v. Aetna Life Ins. Co., 174 F.2d 10 (7th Cir. 1949), its purpose is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), citing Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment. In ruling on a motion for summary judgment, this court must review the submitted evidence in the light most favorable to the nonmovant, and determine whether there is a genuine issue of *material* fact, and thus whether the moving party is entitled to judgment as a matter of law. F.D.I.C. v. Knostman, 966 F.2d 1133, 1140 (7th Cir. 1992). See also Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (holding that the district court's task in a motion for summary judgment is "to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial.") A factual dispute is material only if its resolution might affect the outcome of the suit under governing law. Id., citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. DUE PROCESS AND QUALIFIED IMMUNITY

In the instant case, Plaintiff claims that he was deprived of a property interest without due process of law contrary to the rights afforded him under the Fourteenth Amendment. Plaintiff argues that because the decision to suspend him was finalized before he attended his pre-suspension hearing, he received a sham hearing, and because he received a sham hearing, he was deprived of a reasonable opportunity to respond, thereby violating his right to due process. In response, Defendants dispute this, and also argue that they are entitled to qualified immunity.

Section 1983 suits provide a mechanism for vindicating a violation of constitutional rights enumerated elsewhere. 42 U.S.C. § 1983; Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979). In order to state a claim under § 1983, a claimant must allege that (1) he had a constitutionally protected right, (2) he was deprived of that right in violation of the Constitution, (3) the deprivation was caused intentionally by the defendant, and (4) the defendant acted under color of state law. McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993); see Gomez v. Toledo, 446 U.S. 635, 640 (1980). Because the crux of a § 1983 claim is the specific constitutional right alleged to have been violated, this court would ordinarily proceed by analyzing whether Plaintiff had a constitutionally protected property interest, and, if so, to what procedures he was entitled under due process and whether those procedures had been adequately performed. Albright v. Oliver, 510 U.S. 266, 271 (1994).

However, Defendants, who performed the actions at bar in the capacity of public officials, argue that they are entitled to qualified immunity. Qualified immunity for a particular act shields government officials from liability for civil damages originating from that act, but only to the

extent that their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). When qualified immunity applies, insubstantial claims are foreclosed on summary judgment. Anderson, 483 U.S. at 640, n.2.

A two-part test is used to determine qualified immunity: first, the plaintiff must allege facts that make out a violation of a constitutional right; and second, the constitutional right must be sufficiently clear that a reasonable official would have known his actions were unconstitutional. Whitlock v. Brown, 596 F.3d 406, 410 (7th Cir. 2010), citing Saucier v. Katz, 533 U.S. 194 (2001). Put another way, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Pearson, 129 S.Ct. at 816. Because of the heightened requirement that the law must be "clearly established," the protection applies regardless of whether the official's error was a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Pearson, 129 S.Ct. at 815.

Although the Supreme Court previously required that these questions be considered sequentially in order to prevent constitutional stagnation, Saucier, 533 U.S. at 201, Pearson recently relaxed that rigid "order of battle," thereby permitting this court to exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis is addressed first. Pearson, 129 S.Ct. at 818. In this case, the court finds it appropriate to sidestep the constitutional question, but following the example set by the Seventh Circuit, we begin by

"sketching the contours of the alleged constitutional violation."[1] Whitlock, 596 F.3d at 410 (editing marks omitted). Because it is not entirely clear whether Plaintiff is entitled to a pre-disciplinary hearing, much less whether that right is clearly established, this analysis begins by examining the scope of the alleged constitutional violation. See Pearson, 129 S.Ct. at 818 ("It often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be.")

A. Due process claim

To sustain his claim that his due process rights were violated, Plaintiff must prove that (1) he had a constitutionally protected property interest; (2) he suffered a loss of that interest amounting to a deprivation; and that (3) the deprivation occurred without the adequate protection of due process of law. Moss v. Martin, 473 F.3d 694, 700 (7th Cir. 2007). Because Defendants have claimed qualified immunity, the outcome of this motion no longer turns on whether Plaintiff is entitled to a pre-disciplinary hearing conducted in good faith. Instead, this court must determine whether an employee who has been suspended without pay for thirty days after being placed on administrative leave with pay while the government performed its own investigation is entitled to a pre-disciplinary hearing—and if so, whether that right is clearly established law.

---

[1]Pearson also allows this court to sidestep two additional analyses: that of the Mathews balancing test, Mathews, 424 U.S. at 319, see Sonnleitner v. York, 304 F.3d 704, 713-15 (7th Cir. 2002) (applying the Mathews framework to a fact pattern similar to the one at bar) and that of the adequacy of post-deprivation review, Gilbert v. Homar, 520 U.S. 924, 935-36 (1997) (remanding to the Court of Appeals to determine whether a postsuspension hearing was conducted sufficiently promptly to satisfy due process).

1. Protected property interest

Plaintiff argues that he has a property interest in not being suspended from employment. The Due Process Clause guarantees that no State shall deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Although the protection for property interests is fundamental, the property interests themselves are not created by the Constitution. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Instead, the interest must be created by an independent source, such as state law. Id. To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it. Id. "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." Moss, 473 F.3d at 700; see also Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir. 1996).

In the instant case, Plaintiff argues that there are three sources of a protected property interest: via legislative statute, in the form of the Illinois Personnel Code, via administrative regulation, in the form of the Illinois Administrative Code, or via contract, in the form of the collective bargaining agreement that governed the working relationship between the AFSCME and the State of Illinois. At the time Plaintiff was suspended, he was an employee of the Department of Human Services, subject to the Illinois Personnel Code. The Personnel Code does not create an expectation of entitlement for suspensions of 30 days or fewer, only for suspensions over 30 days. See 20 Ill. Comp. Stat. 415/11. The Illinois Administrative Code creates a procedural right to specific notice and hearing procedures for disciplinary suspension without pay for 30 days or fewer. Ill. Adm. Code tit. 80, § 302.640 (2010). However, the failure to conform with the procedural requirements guaranteed by state law does not, in and of itself, constitute a

violation of federal due process. <u>Martin v. Shawano-Gresham Sch. Dist.</u>, 295 F.3d 701, 706 (7th Cir. 2002). Because federal due process requirements are independent from state law procedural rights, the Administrative Code does not, in and of itself, create a relevant protected property interest. <u>Shango v. Jurich</u>, 681 F.2d 1091, 1100 (7th Cir. 1982) ("Procedural protections or the lack thereof do not determine whether a property right exists.").

Finally, the terms of the collective bargaining agreement do create a protected property interest. Although a naked collective bargaining agreement does not create an employment contract, *per se*, except in rare cases, <u>Kreig v. Seybold</u>, 481 F.3d 512, 519-20 (7th Cir. 2007), the terms of a collective bargaining agreement, if sufficiently specific, can create a property interest. <u>See</u>, <u>e.g.</u> <u>Roman v. U.S. Postal Service</u>, 821 F.2d 382, 386 (7th Cir. 1987); <u>cf.</u> <u>Kreig</u> 481 F.3d at 520. The collective bargaining agreement requires that "[d]isciplinary action may be imposed upon an employee only for just cause." Memorandum in Opposition re Motion for Summary Judgment (#18, Exh. 5, Agreement, Art. IX). Thus, because the CBA specifically states that no employee may be disciplined without just cause, Plaintiff has a property interest. <u>See</u> <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225, 231-32 (3rd Cir. 2008).


2. Procedures required by Constitutional due process

Having determined that Plaintiff had a property interest, this analysis proceeds by examining what procedures are due. The heart of Plaintiff's claim is that he was given a sham hearing. It is well-established that a sham proceeding, in which an individual was deprived an adequate opportunity to respond, is a violation of due process. <u>Levenstein v. Salafsky</u>, 164 F.3d 345, 351 (7th Cir. 1998). However, prior to examining whether the proceeding was a sham,

Plaintiff must, and does, argue that he has a clearly established right to that pre-disciplinary hearing. On that issue, this court disagrees. Plaintiff first argues that he is entitled a pre-disciplinary hearing under state law and the terms of the collective bargaining agreement. Memorandum of Law in Opposition to Summary Judgment (#18). As discussed *supra*, procedural protections do not create a due process right, and accordingly, cannot create a constitutional right to that procedure. Plaintiff then argues that a pre-disciplinary hearing is always required before an employee is suspended, pursuant to Gilbert v. Homar, 520 U.S. 924 (1997) and Ibarra v. Martin, 143 F.3d 286 (7th Cir. 1998). Plaintiff's Supplemental Memorandum (#23). This court disagrees both with Plaintiff's reading of those two cases as well as with Plaintiff's assertion that this right is clearly established. See Gilbert, 520 U.S. at 928-29 ("[W]e have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination."); Ibarra, 143 F.3d at 290 ("Like the Supreme Court in Gilbert, we *assume for the sake of argument* that suspension is enough to infringe a protected property interest.") (emphasis added).

The fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (notice); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (opportunity to be heard). However, procedural due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "Due process is flexible and calls for such procedural protections as the particular situation demands." Id. Mathews delineated a three-factor framework to determine the scope and timing of the procedures necessary to satisfy due process when there is an impending threat that a reasonably

expected benefit or term of employment will be deprived. <u>Mathews</u>, 424 U.S at 335. These factors are: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. <u>Id.</u>

In applying this framework to the question of whether a pre-deprivation or post-deprivation hearing is required, the courts have developed, among other cases, these rules:

a) termination required a pre-deprivation opportunity to respond, coupled with post-termination administrative procedures as provided by state law or a collective bargaining agreement, <u>Loudermill</u>, 470 U.S. 532; <u>Chaney v. Suburban Bus Div. of Reg'l. Transp. Auth.</u>,52 F.3d 623, 630 (7th Cir. 1995);

b) suspension without pay, following arrest on drug-related charges, required a post-deprivation hearing, <u>Gilbert</u>, 520 U.S. 924;

c) suspension without pay, for a firefighter who was frequently absent without authorization, required a post-deprivation hearing, <u>Jones v. City of Gary, Ind.</u>, 57 F.3d 1435 (7th Cir. 1995); and

d) suspension with pay does not trigger any due process protection, <u>Palka v. Shelton</u>, ---F.3d -----, 2010 WL 3911340 (7th Cir. 2010); <u>Townsend v. Vallas</u>, 256 F.3d 661 (7th Cir. 2001).

These cases appear to suggest that a pre-deprivation hearing is required for termination of employment, whereas a post-deprivation hearing may be sufficient for suspension. This court recognizes that despite the fact that Plaintiff was only deprived of employment for 30 days and

not permanently terminated, he is still entitled to "some kind of hearing." <u>Gilbert</u>, 520 U.S. at

932 ("Unlike the employee in <u>Loudermill</u>, who faced termination, respondent faced only a

temporary suspension without pay. So long as the suspended employee receives a sufficiently

prompt postsuspension hearing, the lost income is relatively insubstantial (compared with

termination), and fringe benefits such as health and life insurance are often not affected at all.")

Plaintiff has not cited, and this court has not found, controlling precedent which clearly states

that Plaintiff was entitled to a pre-deprivation hearing based upon the facts of this case. Because

any further discussion regarding the procedures to which Plaintiff is entitled would require a

ruling on constitutional issues, and because this court is permitted to dispose of the instant case

on alternate grounds, this opinion proceeds with an analysis of qualified immunity.


B. Qualified immunity

      In their Motion for Summary Judgment (#12), Defendants argue that they are entitled to

qualified immunity. This court agrees. "[G]overnment officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). An important question is raised

here: If the right is not explicitly formulated in a statute, when and how does it become "clearly

established"? While the next most obvious route to becoming clearly established law is through

controlling precedent on the same set of operative fact, a right can also be clearly established

when pre-existing law is sufficiently clear such that the unlawfulness is apparent and a

reasonable official would understand that what he is doing violates that right. <u>Anderson v.</u>

Creighton, 483 U.S. 635, 640 (1987). The Seventh Circuit has held that a right is considered clearly established if "there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." Cleveland-Perdue v. Brutsche, 881 F.2d 427, 431 (7th Cir. 1989). Such a rule precludes an official from escaping liability from an inevitable outcome merely because a court in that jurisdiction had not been presented with an opportunity to rule on that issue. Id.

Here, the issue is whether it is clearly established that Plaintiff is entitled to a pre-deprivation hearing. If Plaintiff is not entitled to a pre-deprivation hearing, then whatever procedures Defendant provided, whether in good faith or not, do not violate the mandate of constitutional due process. If it is not clearly established that Plaintiff was or was not entitled to a pre-deprivation hearing, Defendants are shielded by qualified immunity. It is clearly established that employees with a protected property interest who are facing termination are entitled to an abbreviated pre-termination review process, followed by a more extensive post-termination process. Loudermill, 470 U.S. at 547-48. It is also clearly established that employees with a protected property interest who are suspended in response to exigent circumstances are entitled only to post-suspension review. It is not clear, however, to what procedures an employee is entitled if the government has already conducted its own investigation in advance of the suspension. As for clear precedent, the Supreme Court has not yet determined what minimal due process protections are afforded to government employees who are suspended without pay. Gilbert, 520 U.S. at 928-29. As is evident, it is not clearly established that Plaintiff is entitled to a pre-suspension hearing. Therefore, because it is not clearly established that Defendants were required to provide a pre-suspension hearing comporting with the rigors of constitutional due

process, their conduct in providing what they could have reasonably considered an expedited hearing does not violate clearly established constitutional rights of which a reasonable person would have known.

Furthermore, it is the plaintiff's burden to establish the existence of a clearly established constitutional right. <u>Sonnleitner v. York</u>, 304 F.3d 704, 716-17 (7th Cir. 2002). As discussed above, Plaintiff has failed to cite to any controlling precedent indicating that he has a right to a pre-deprivation hearing. Therefore, because there is no controlling precedent on this factual situation, and because there is no trend in the caselaw to suggest that a reasonable official would have known that what he was doing violated a constitutional right, Defendants are entitled to qualified immunity.


## III. CONSTITUTIONAL LIMITS ON INJUNCTIVE RELIEF

Plaintiff further argues that Defendants are not entitled to qualified immunity because he has requested that this court grant injunctive relief, and qualified immunity only shields government officials from liability in the form of money damages. Even if Plaintiff were to prevail on the merits, this court has no jurisdiction to issue an injunction under the facts of the instant case, pursuant to the Constitution of the United States.

Article III of the Constitution requires that a plaintiff in the federal courts allege an actual case or controversy. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101 (1983), <u>citing</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 94-101 (1968). That is to say, only cases that fulfil this "case-or-controversy" requirement may be heard by the federal courts. <u>See</u> <u>generally</u>, <u>Flast</u>, 392 U.S. at 95-97 (discussing justiciability). One element of a justiciable case or controversy is the

requirement of standing. To satisfy Article III standing, a plaintiff must show that (1) it has suffered an "injury in fact" that is concrete and particularized, and actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-181 (2000); Sierakowski v. Ryan, 223 F.3d 440, 442-43 (7th Cir. 2000). To have an injury in fact, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Lyons, 461 U.S. at 101-02 (quotation marks omitted). Although Defendants did not argue that Plaintiff lacked standing to pursue injunctive relief, this court is independently obligated to address it, as standing is a jurisdictional requirement. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Family & Children's Ctr., Inc. v. Sch. City of Mishawaka, 13 F.3d 1052, 1058-59 (7th Cir. 1994).

In the instant case, Plaintiff has sustained a injury and has pursued a claim of money damages for this prior injury, the disposition of which is addressed *supra*. Plaintiff further seeks prospective equitable relief in the form of an injunction and a declaratory judgment. However, Plaintiff has not alleged a real and immediate threat that he would again be summoned into a pre-disciplinary hearing whose outcome was predetermined by Defendants. Therefore, because he is not in immediate danger of sustaining some future direct injury as the result of the challenged official conduct, he does not have standing to sustain a demand for prospective equitable relief. As for the request for a declaratory judgment, the Lyons Court denied declaratory relief under the same reasoning as the denial of an injunction, and this court follows suit regarding Lallave's

request for declaratory judgment. <u>Lyons</u>, 461 U.S. at 104.

Furthermore, injunctive relief "is appropriate in those cases where the moving party can demonstrate that (1) no adequate remedy at law exists; (2) it will suffer irreparable harm absent injunctive relief; (3) the irreparable harm suffered in the absence of injunctive relief outweighs the irreparable harm respondent will suffer if the injunction is granted; (4) the moving party has a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest." <u>Daniels v. Southfort</u> 6 F.3d 482, 485 (7th Cir. 1993). In order to prevail, the moving party must satisfy each element of this five part test. <u>Id.</u> at 485. In the instant case, not only has Plaintiff failed to allege any of the five elements necessary for injunctive relief, but additionally, an adequate remedy at law exists. <u>Lyons</u>, 461 U.S. at 112-13. ("[I]f Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983.").

Accordingly, because (1) Defendants are protected from the damages claims via qualified immunity and (2) Plaintiff has no standing to pursue his injunction and declaratory judgment claim, there remains no genuine issue of material fact. Thus, Defendants are entitled to judgment as a matter of law, and Defendants' Motion for Summary Judgment must be granted.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#12) is GRANTED.

(2) This case is terminated.

ENTERED this 5th day of November, 2010.


s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE